ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HINTZ & REIMAN, INC., et al.,
                Plaintiffs,

-against-

J&J PRODUCE, et al.,
                Defendants.

No. 05 Civ. 5739 (LTS)(KNF)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 03/24/06

Copies mailed counsel for H+R and Oaxaca
Chambers of Judge Swain 3/20/06

MEMORANDUM OPINION AND ORDER

       This case arises under provisions of the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. §§ 499a-499t, which imposes a trust in favor of the seller upon perishable agricultural commodities and their proceeds until the seller has received full payment. The action commenced with the filing of a complaint on June 21, 2005, by the Hintz and Reiman Group ("Hintz & Reiman"), an unpaid wholesale distributor that had sold perishable agricultural commodities to Defendant J&J Produce. On June 24, 2005, this Court issued a temporary restraining order enjoining J&J Produce from paying out or in any other way dissipating its PACA trust assets without agreement of the parties or further order of the Court. Upon Plaintiffs' motion, a PACA Claims Procedure Order was entered (along with a Preliminary Injunction) on August 5, 2005. That Order established a procedure for notifying potential PACA trust beneficiaries of the lawsuit, as well as a procedure by which they could intervene and file claims.

       On September 12, 2005, Intervenor Oaxaca Mexican Products, Inc. ("Oaxaca") filed both a Complaint in Intervention and a PACA Proof of Claim in the amount of $155,579.60 (including interest on outstanding invoices). On October 3, 2005, Plaintiff Hintz & Reiman filed an objection to certain PACA trust claims, including Oaxaca's. Hintz & Reiman objected to

Oaxaca's claim on three grounds: first, that Oaxaca had failed to adequately preserve its PACA trust protection because Oaxaca had not included the language required by 7 U.S.C. § 499(e)(c)(4) on the face of its invoices; second, that Oaxaca had failed to account properly for a sum of money it owed Defendant J&J Produce; and third, that Oaxaca's claimed outstanding balance of $155,579.60 differed from J&J Produce's Accounts Payable Report, which indicated that Oaxaca was only owed $69,530.35.

Oaxaca responded to Hintz & Reiman's objections on October 19, 2005. There, Oaxaca clarified that the principal amount of its filed PACA claim was for $136,839.60 and asserted that Hintz & Reiman's objection to its claimed amount payable was insufficient as a matter of law. In addition, Oaxaca responded to Hintz & Reiman's objections to the placement of the statutory language on the back of its invoices, arguing that Oaxaca's notices "contained all the relevant and pertinent information, including the language authorized by 7 U.S.C. § 499(e)(c)(4) . . ." and that it had "substantially complied with all requirements of the statute for preservation of rights." Oaxaca further argued that "[Hintz & Reiman] w[as] not prejudiced and h[as] no standing to object to the mere form of [Oaxaca's] notice."

On February 14, 2006, Hintz & Reiman filed a limited withdrawal of its objection to Oaxaca's PACA trust claim, specifically withdrawing its objections related to Oaxaca's alleged failure to account properly for money owed by and to J&J Produce. However, its objection citing Oaxaca's alleged failure to properly preserve its PACA trust protection was not withdrawn. Oaxaca responded on February 27, 2006, with a memorandum of law in opposition to Hintz & Reiman's objection. The only remaining issue before the Court is whether Oaxaca's failure to include the requisite statutory language on the face of its invoices resulted in a failure to preserve PACA trust protection. For the reasons that follow, the Court holds that Oaxaca failed to

properly preserve its PACA trust rights.

## Discussion

In order to obtain the benefits of a PACA trust, a seller (such as Oaxaca) must give notice to the commission merchant (such as J&J Produce) of its intent to preserve its right to PACA trust benefits. See 7 U.S.C.A. §§ 499e(c)(3) and (4). "PACA provides for two methods by which such notice may be given. ...[N]otice may be given in writing within thirty calendar days after expiration of the time by which payment must be made, whether by regulation or as agreed by the parties, or within thirty calendar days after the supplier, seller, or agent has received notice that the payment instrument has been dishonored." Lincoln Diversified, Inc. v. Mangos Plus, Inc., 2000 WL 890198 at *2 (S.D.N.Y., July 05, 2000). Alternatively, under section 499e(c)(4) of the statute,

> a licensee may use ordinary and usual billing or invoice statements to provide notice of the licensee's intent to preserve the trust. The bill or invoice statement must include the information required by the last sentence of paragraph (3) and contain <u>on the face of the statement</u> the following: "The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by section 5(c) of the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. 499(e(c)). The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities, and any receivables or proceeds from the sale of these commodities until full payment is received."

7 U.S.C.A. § 499 (e)(c)(4) (West 2005) (emphasis added). It is undisputed that Oaxaca attempted to preserve its PACA trust protection by including the requisite statutory language on its invoices. However, Oaxaca printed this language on *the back* of its invoices, despite the statute's directive that the language be included "on the face" of the invoice.

Oaxaca urges the Court to "recognize[] the broad purpose of PACA and its statutory trust, and [to] opt[] for a more liberal approach to technical compliance with the statutory scheme."

Oaxaca's Memorandum of Law in Opposition at 3. In support of this argument, Oaxaca cites several decisions by courts in other Circuits and districts that have applied the principle of "substantial compliance" in interpreting certain PACA statutory provisions, for the proposition that "[r]equiring strict compliance with the regulation would thwart the remedial nature of [PACA]." Hull Co. v. Hauser's Foods, Inc., 924 F.2d 777, 783 (8th Cir. 1991) (holding notice given to government agency pursuant to requirement of agency regulation, treated by the agency as compliant with the regulation, was sufficient to preserve PACA trust rights under former version of statute where necessary information could be gleaned from notice and statute simply required notice to agency). For the following reasons, the Court finds Oaxaca's "substantial compliance" argument unavailing.

The cases upon which Oaxaca relies did not involve statutory language plainly inconsistent with the conduct at issue. See In re Richmond Produce Co., Inc., 112 B.R. 364, 370 (Bankr. N.D. Cal. 1990) (finding substantial compliance with former statutory requirement that notice of intent to preserve trust rights be filed with agency within thirty days "after expiration of the time . . . by which payment must be made" where notice was given prior to due date of some of the subject payments, early notice did not "creat[e] a regulatory problem of any type" and statute "[d]id not contain any plain and unambiguous language prohibiting the filing of a PACA notice after delivery and before a default"); Hiller Cranberry Products, Inc. v. Koplovsky, 165 F.3d 1, 6-8 (1st Cir. 1999) (finding statutory provision regarding waiver of trust rights unclear and upholding trust rights with respect to portion of a transaction where statute did not explicitly address the situation); In re Carlton Fruit Co., Inc., 84 B.R. 810, 812 (Bkrtcy.M.D.Fla.,1988) (upholding notice of intent filed with agency under prior regulation despite technical defects where seller "[did] everything possible to comply with the notice requirement.").

Here, by contrast, the relevant statutory provision specifically requires that the "bill or invoice statement . . . contain on the face of the statement" the rights-preservation language detailed in the statute. 7 U.S.C.A. § 499(e)(c)(4). As the Second Circuit has held, "[s]tatutory analysis begins with the plain meaning of the statute. [] A court looks first to the language of the statute itself. [] When the language of a statute is unambiguous, 'the judicial inquiry is complete.'" Marvel Characters, Inc. v. Simon, 310 F.3d 280, 290 (2d Cir.2002) (internal citations omitted). See also In re Marvin Properties, Inc., 854 F.2d 1183, 1186 (9th Cir. 1988) ("[i]n the absence of a 'clearly expressed legislative intention to the contrary,' the language of the statute itself 'must be ordinarily regarded as conclusive.'") (quoting Burlington Northern R.R. Co. v. Oklahoma Tax Comm'n, 481 U.S. 454, 461 (1987) (internal citations omitted)).

Furthermore, statutory language is to be construed in such a way as to give all of its terms meaning, unless the result would be absurd. See Nussle v. Willette, 224 F.3d 95, 101 (2d Cir.2000), rev'd on other grounds sub nom. Porter v. Nussle, 534 U.S. 516 (2002)) (holding that "the language of the statutory provision, if clear and unambiguous on its face, is presumed to bear its plain meaning unless the text suggests an absurd result."). Here, the requirement that the language appear "on the face" of the document reads clearly to require that the preservation language be displayed on a particular part of the bill or invoice – the front. To construe the statute to give such language its trust-preserving effect as long as the language appeared anywhere on the seller's invoice would be to ignore the unambiguous statutory language and to deny meaning to the term "on its face."[1]

---

[1] These principles of statutory construction also render unpersuasive Oaxaca's argument that its trust rights should be upheld because it was in compliance with 7 C.F.R. § 46.46(f)(3), a U.S.D.A. regulation that describes the means by which licensees may "use their invoice or other billing statement to preserve trust

Strict application of the specific statutory requirement for preserving trust rights, which put PACA trust creditors in a favored and protected position relative to general creditors, is also an appropriate means of effectuating Congressional intent in fixing the relative positions of PACA trust and general creditors. The Bankruptcy Court for the Southern District of New York made this point in In re Chipwich, Inc., 165 B.R. 135 (Bankr. S.D.N.Y.1994): "[g]iven PACA's adverse impact on the estate and its incompatibility with the fundamental bankruptcy principle of equality of treatment for similarly situated creditors, we hold that a PACA claimant cannot benefit from PACA, at the expense of other creditors, without having strictly complied with the statute and applicable regulations." Id. at 138.

## Conclusion

Because 7 U.S.C. §§ 499e(c)(4) clearly and unambiguously requires that the requisite statutory language be "on the face" of an invoice in order to preserve a PACA trust claim and Oaxaca's reservation of rights was not so displayed, the objection to Oaxaca's claim is sustained and the claim is disallowed in its entirety.

SO ORDERED.

Dated: New York, New York
March 20, 2006

LAURA TAYLOR SWAIN
United States District Judge

---

benefits" but does not incorporate the specific "on its face" language appearing in 7 U.S.C. §§ 499e(c)(4).